CHARLES H. HYDE vs. WALTER RUSSELL.

The act of 1788, c. 68, "to prevent the destruction of the fish called shad and alewives in Mystic River," within certain towns, conferred upon the committees, chosen by such towns, in pursuance of its provisions, power and authority to cause the natural course of the said river, and the streams running into it, to be kept open and without obstruction; to remove all such obstructions as might be found therein; to make the passage way wider or deeper, if they should find it neces-

sary; and, for such purposes, to go on the land of any person, bordering on the said river or streams, without being considered as guilty of a trespass, and to remove across such land any such obstructions, implements or tools, as might in any way impede, obstruct or hinder any fish from freely passing up and down said river or streams, otherwise than as provided in the act. In an action of debt, to recover a penalty under this statute, it was held, that the obstructions prohibited by it were such as should impede, obstruct, or hinder the passage of the fish; and that whether such obstruction existed or not was a question of fact, to be decided by the jury, in each particular case.

THIS was an action of debt, to recover a penalty for forcibly obstructing the plaintiff in the performance of his duty, as one of the committee of the town of Medford, for the year 1845, for preserving the fish in Mystic River, and the streams emptying into the same. The action was originally commenced before a justice of the peace, by whom judgment being rendered for the plaintiff, the defendant thereupon appealed to the court of common pleas.

The plaintiff alleged, in his declaration, that the inhabitants of Medford, at their annual town meeting in March, 1845, chose the plaintiff and two other persons a committee for the preservation of fish; that they were duly sworn to the faithful discharge of their duty as such; that, on the 26th of April, 1845, being a day on which, after sunrising, the catching of alewives in the town of West Cambridge was prohibited by law, the plaintiff "there found a fence made of boards and stakes situated and standing in said West Cambridge, in a certain stream there running from and out of Spy Pond, so called, into Mystic River, up which stream aforesaid, the fish called alewives usually pass into the said pond, and the said fence so standing in the said stream as aforesaid, below the easterly side of said pond, did then and there narrow and obstruct the natural course of said stream there, [and the passage of said fish called alewives up the said stream], on the easterly side of said pond, on the said 26th day of April aforesaid after sunrise on said day;" that the plaintiff, as a member of the said committee, proceeded to remove the obstruction; and that the defendant then and there forcibly hindered and opposed him while engaged in removing the same, &c. The plaintiff had leave, before the justice, to

amend his declaration, by striking out the second count, and also by adding to the first the words included in brackets.

The statute, on which this action was founded, was a private act, passed on the 16th of February, 1789, (*St.* 1788, *c.* 68) " to prevent the destruction of the fish called shad and alewives, in Mystic River, so called, within the towns of Cambridge, Charlestown and Medford." This statute, among other provisions, authorized the election of a committee " for the preservation of fish," in each of those towns, and gave certain powers to a majority of each of the committees in their respective towns. This act, which was limited to the period of five years, was extended and made perpetual by an act passed on the 27th of February, 1794 (*St.* 1793, *c.* 66.) By the act of 1802, *c.* 78, certain additions, relating to the town of Medford, were made to the act of 1788; and an additional act, passed on the 2d of February, 1816, (*St.* 1815, *c.* 54) extended the act of 1788 to the town of Woburn, and also gave to each member of either of the committees, to be chosen in the several towns, the power to do any act in either town, which might before have been done by a majority of each committee in their respective towns. By an additional act passed on the 14th of February, 1821, (*St.* 1820, *c.* 67,) the provisions of the preceding acts were extended to the town of West Cambridge.

At the trial in the court of common pleas, before *Cushing*, J., it was in evidence on the part of the plaintiff, that the plaintiff was duly elected and qualified as a member of the committee of the town of Medford, " for the preservation of fish," for the year 1845; that, on the 26th of April, 1845, a day on which the taking of fish in the brook running from Spy Pond into Mystic River was not lawful, the plaintiff was engaged in removing certain weirs, built by the defendant in and partly across the brook, for the purpose of taking alewives with bow nets, which weirs, the plaintiff alleged, obstructed the natural current of the stream, and interrupted the free passage of the fish in the brook; that the defendant forcibly opposed the plaintiff in removing the weirs; that large num-

bers of alewives go up the brook annually to Spy Pond, and there cast their spawn; that the weirs built by the defendant and removed by the plaintiff were in the town of West Cambridge; that the brook, at the place where the weirs were placed by the defendant, was about five feet wide, and above and below was six feet wide or more, with a sloping bank; and that it was a small stream, and, at times, although not often, was almost dry.

It was in evidence, on the part of the defendant, that the weirs, two in number, consisted of posts driven into the earth on each side of the centre of the brook, and boards nailed to the posts, by means of which the channel for the passage of the fish was reduced to about two feet in width; that the defendant had been for many years and then was the owner of the land on each side of the brook, at the place where the weirs were erected; that the weirs were built by him about fifteen years ago; that the opening in the weirs afforded a sufficiently free passage for the water and fish running in the brook; that an ancient highway crossed the brook about six feet above the weirs, and that the culvert of the bridge over the brook was at one end from eighteen to twenty-two inches wide, twenty-eight inches at the other end, and two feet high; that the defendant, in the spring of 1844, having heard that the committee of the town of Medford considered his weirs an obstruction, applied to the committee of West Cambridge, to examine them and determine whether they were so or not, within the meaning of the acts above enumerated; that this committee did thereupon examine the defendant's weirs, and informed him that in their judgment they were not such an obstruction; and that, in the judgment of several experienced fishermen, who were called as witnesses and testified, the defendant's weirs were no obstruction to the passage of the fish up or down the brook, and the openings therein were fully sufficient for that purpose.

The parties referred to and relied upon the following provisions of the act of 1788, *c.* 68: —

The first section declares, that the committees "shall have

full power and authority to cause the natural course of the said river, and the streams running into it, to be kept open and without obstruction, and to remove all such obstructions as may be found therein ; and to make the passage wider or deeper, if they shall find it necessary ; " and " shall have authority, for such purposes, to go on the land of any person which may border on said river or streams, without being considered as guilty of a trespass, and to remove across such land any such obstructions, implements or tools, as may in any way impede, obstruct or hinder any fish from passing freely up and down said river or streams, otherwise than by this act is provided."

The second section declares, that "no person shall, at any time, place any kind of obstruction in said river, streams or ponds, which may obstruct or hinder any shad or alewives from passing up or down the same. And no person shall be permitted, by disturbing the waters aforesaid, or by any other means, to restrain or interrupt any of those fish in their passage up and down said river and streams."

The plaintiff, upon the evidence above stated, and the provisions of the statute referred to, contended, and requested the court to instruct the jury, that the weirs, thus erected and continued by the defendant on non-fishing days, were in contravention of the statutes referred to ; that they were in and of themselves an obstruction to the natural current of the brook, and an interruption to the passage of the fish ; and that the defendant, as the owner of the banks of the stream, at the place where the weirs were, had no right to obstruct or to make any alteration in the brook, which would impede the passage of the fish on days when it was not lawful for him to take fish there.

The presiding judge declined so to instruct the jury, but did instruct them, that the defendant, being the owner of the banks of the brook, had a right to put up and maintain a permanent fence or weir therein, as well on non-fishing as on fishing days, provided such fence or weir did not obstruct the free passage of the fish ; that it was incumbent upon the plain-

tiff to prove by evidence, other than the fact of there being·
such fences or weïrs, situated and placed in the brook by the
defendant, that the same did actually obstruct or hinder the
free passage of the fish, against the provisions of the acts
aforesaid ; that such being the rule, it was a question wholly
for the jury to decide ; and that if they found that the weirs
or fences were no obstructions to the free passage of the
fish in the brook, they should render a verdict for the de-
fendant.

The jury thereupon brought in a verdict for the defendant,
and the plaintiff filed exceptions.

The case was argued at the last October term.

*A. Bartlett,* for the plaintiff.

*E. Buttrick,* for the defendant.

SHAW, C. J.   It appears to the court, that the question
presented by the bill of exceptions, in this case, must depend
upon the first section of the original act of 1788, *c.* 68.   That
section provides, that the committees shall have full power
and authority to cause the natural course of the Mystic River,
and the streams running into it, to be kept open and without
obstruction, and to remove all such obstructions as may be
found therein, &c.

The plaintiff, in his declaration, after stating that he was
duly chosen one of the committee for the town of Medford,
that he found in one of the tributary streams of the Mystic
River a fence made of boards and stakes, and that this fence
narrowed and obstructed the natural course of the stream, and
the passage of the fish called alewives up the same, then avers
that he was proceeding to remove the obstructions from the
stream, and that the defendant forcibly opposed and hindered
him, whilst thus engaged, &c.

Without going particularly into the facts of the case, it
may be sufficient to state, that there was evidence showing
that the brook was small and narrow, about five feet wide,
with sloping banks, that stakes and boards were put down, on
each bank, towards the centre or thread of the stream, leaving
a clear space between, sufficient, as the defendant contended,

and introduced evidence to prove, for the free passage of the water, and of the fish, both up and down.

The plaintiff insisted, that the narrowing of the open passage was *de facto* an obstruction of the natural course of the stream, and a violation of the statute, and requested the court so to instruct the jury. The court declined so to instruct, but directed the jury, that the defendant, being owner of the soil on both sides, had a right to place any thing there, not in violation of the statute ; and left it to the jury upon the evidence to say, whether the fence erected by the defendant did obstruct or hinder the free passage of the fish : and if it did, then to find for the plaintiff, otherwise for the defendant. The jury found for the defendant, and the plaintiff excepted.

It is now argued, that the question should not have been left to the jury, but that if the structure put up by the defendant, which was said to be to enable him the better to take fish with a bow net, on the days when fishing was by law permitted, did diminish the breadth of the natural watercourse, from bank to bank, it was a violation of the statute, whether it in fact impeded the passage of fish or not. But this is a question of construction. The legislature might so enact ; the question is whether they have done so.

It is a good rule, in the exposition of a statute, especially a penal one, to consider what was the object and purpose of the legislature, and so to construe the words, where construction is admissible, as to promote and accomplish that object. The first clause of the act of 1788, *c.* 68, gives the committee power to cause the natural course of the stream to be kept open, and without obstruction. If this stood alone, it would favor the views of the plaintiff. But another clause, later in the same section, authorizes them to remove and carry away, across the land of others, if necessary, such obstructions, implements, or tools, as may in any way impede, obstruct, or hinder any fish from passing freely up and down. This clause tends to qualify the generality of the former, and to limit it to such obstructions as may impede the free passage of the fish. To the same effect, is a clause in the second section

22 *

" No person shall, at any time, place any kind of obstruction, &c., which may obstruct or hinder any shad or alewives from passing up and down the same." The plaintiff seems to have put the same construction on this part of the statute in his declaration ; he originally alleged, that the defendant did narrow and obstruct the natural course of the stream, but he afterwards obtained leave in the justice's court to amend by adding to this allegation the words, " and the passage of the fish called alewives up said stream."

If it was necessary to aver this fact, it was equally necessary to prove it. It was, therefore, a question of fact for the jury. The law, we think, was rightly laid down by the judge, that it was penal so to obstruct the stream as to impede the passage of fish, and that any thing placed in the stream, which did not impede the passage of fish, was not prohibited and made penal by the statute. The question, whether it did impede the passage of fish, was a question of fact, and rightly left to the jury on the evidence.

*Exceptions overruled.*